IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>PAMELA GOLINVEAUX,<br><br>Defendant. | No. CR08-2015<br><br>REPORT AND RECOMMENDATION |

## TABLE OF CONTENTS

I.   INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . 2

III. ISSUE PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.  RELEVANT FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

V.   DISCUSSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
     A.  Was Defendant's Consent to Search Obtained in
         Violation of Her Fifth and Fourteenth Amendment Rights?. . . . . . . 6
     B.  Was Defendant's Consent to Search Given Voluntarily?. . . . . . . . 9
         1.  Applicable Legal Standard. . . . . . . . . . . . . . . . . . . 9
         2.  Personal Characteristics. . . . . . . . . . . . . . . . . . . 10
         3.  Environmental Factors. . . . . . . . . . . . . . . . . . . . 11
         4.  Analysis. . . . . . . . . . . . . . . . . . . . . . . . . . . 13
     C.  Is the "Inevitable Discovery Doctrine" Applicable?. . . . . . . . . 15

VI.  RECOMMENDATION. . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## I. INTRODUCTION

On the 27th day of October 2008, this matter came on for hearing on the Motion to Suppress (docket number 13) filed by the Defendant on October 14, 2008. The Government was represented by Assistant United States Attorney Robert L. Teig. Defendant Pamela Golinveaux appeared personally and was represented by her attorney, Jill M. Ableidinger.

## II. PROCEDURAL HISTORY

On August 26, 2008, Defendant was charged by Indictment (docket number 1) with being a felon in possession of ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). Defendant entered a plea of not guilty and trial was scheduled for November 17, 2008. On October 14, 2008, Defendant filed the instant motion to suppress.

On October 31, 2008, Defendant entered a conditional plea of guilty pursuant to FEDERAL RULE OF CRIMINAL PROCEDURE 11(a)(2). Defendant reserved her right to appeal all issues raised by the instant motion to suppress, and reserved her right to withdraw her plea if she prevails on the instant motion. *See* Notice of Conditional Guilty Plea and Reservation of Right to Appeal (docket number 34).

## III. ISSUE PRESENTED

Defendant asks the Court to suppress any evidence seized during the search of her vehicle on March 12, 2004. Defendant contends that her consent to search "was obtained in violation of the Fifth and Fourteenth Amendments," and that her consent "was not given voluntarily." The Government disputes Defendant's contentions, and argues the evidence is admissible in any event pursuant to the inevitable discovery doctrine.

## IV. RELEVANT FACTS

The facts underlying the instant motion are largely undisputed. At 7:27 p.m. on March 12, 2004, Officer Nathan Balder[1] was dispatched to the Wal-Mart store in Cedar

---

[1] At that time, Balder was an officer with the Cedar Falls Police Department.
(continued...)

2

Falls regarding a reported shoplifter. According to the dispatch log, Officer Balder arrived at the store at 7:37 p.m. Cedar Falls Police Officer Mark Abernathy arrived at the scene one minute later, at 7:38 p.m.

After arriving at the scene, the officers proceeded to the "loss prevention" office near the door. Wal-Mart's loss prevention officer advised the police officers that he observed Defendant take boxes of cold medicine containing pseudoephedrine from the shelf, and leave the store without paying. The loss prevention officer brought Defendant back to the office, where they waited for the police officers to arrive. With Defendant at the time was one Seth Caldwell.

Officer Balder then spoke with Defendant in the loss prevention office. Officer Balder testified that he could not recall whether he talked to Defendant about the alleged theft, but he asked for consent to search her car. In response, Defendant asked to speak to a lawyer. According to Officer Abernathy, who was observing the conversation, Defendant said she "wanted that lawyer thing." Officer Abernathy testified that Defendant said she did not want the officers to search her car.

Because of the nature of the items allegedly stolen, Officer Balder then called Captain Craig Berte, who was the commanding officer on that shift. The dispatch log indicates that Captain Berte was dispatched at 7:52 p.m. and, according to Officer Abernathy, he arrived "within minutes." Upon Captain Berte's arrival, Officer Balder advised him of the circumstances, including Defendant's request for counsel and her refusal to consent to a search of her vehicle. Captain Berte then entered the loss prevention office and talked with Defendant.

The loss prevention office at Wal-Mart is an unmarked windowless room, measuring approximately 12 feet by 20 feet. Present in the room when Captain Berte met with Defendant were Defendant, Seth Caldwell, Wal-Mart's loss prevention officer, the

---

[1](...continued)
Balder testified that he is now an Ida County Deputy Sheriff.

three uniformed police officers,[2] and perhaps the store manager. Defendant, who was the only woman in the room, was seated at a table. It is likely that the officers were standing. Defendant was not handcuffed. No threats or promises were made to Defendant at any time. All of the officers testified that they did not see any signs that Defendant was impaired by alcohol or drugs.

Captain Berte told Defendant that he knew she had asked for an attorney and he did not intend to ask her any questions regarding the alleged theft. Captain Berte was concerned, however, about potential danger to the public if Defendant's car contained other precursors for the manufacture of methamphetamine. Captain Berte told Defendant that "hundreds and hundreds" of people go in and out of Wal-Mart and if her car contained dangerous chemicals, it would constitute a hazard to the public. Captain Berte denied that it was an "impassioned speech," and testified that it was not intended to be a plea to Defendant's emotions. Defendant said repeatedly that there was nothing illegal in her car. Defendant finally gave permission to search her car for chemicals, but she wanted to be present during the search. According to Captain Berte's report, the consent to search was given at 8:15 p.m.[3]

The group proceeded to the parking lot and Defendant apparently led them to her vehicle. Officer Balder handed Defendant her keys[4] and she unlocked the vehicle using a remote control. Case Agent Adam Galbrith testified that he subsequently determined that

---

[2] Lieutenant Brown of the Cedar Falls Police Department also responded to the scene, but it appears that he arrived while the search was being conducted in the parking lot.

[3] Officer Abernathy testified the officers' "body mikes" were on and an audio recording was made of the discussion in the office at Wal-Mart. The recordings are only kept for 6-12 months, however, and this incident occurred 4-1/2 years ago. Consequently, no recording exists.

[4] The record is silent regarding how Officer Balder came into possession of Defendant's keys.

4

the vehicle was registered to Defendant on that date. That is, *if* a records search had been done under Defendant's name, the vehicle description and license plate could have been determined. Captain Berte also noted that it would have been relatively easy to identify Defendant's vehicle by using the remote control device.

The search began at 8:20 p.m. A tin containing methamphetamine residue was found in the center console and drug pipe was found in a cup holder. Of significance to the instant charge, a loaded .22 caliber handgun was found under the driver's seat. More drug paraphernalia was found behind the front seat and a bloody syringe was found in the trunk. Defendant was arrested at 8:27 p.m. and, for the first time, given a *Miranda* warning.

Defendant was transported to the jail at 11:37 p.m.[5] The booking process started at 12:07 a.m. Defendant denied any drug use and the booking officer did not observe any signs of impairment. Under cross-examination, however, Agent Galbrith conceded that it was possible for the effect of drugs to "wear off" during the four hours between when Defendant's consent was given and the booking process.

Captain Berte testified that even if Defendant had not given consent to search the vehicle, a search would have been required prior to having the vehicle towed. Bob Brokaw, the Wal-Mart manager, told Captain Berte that he wanted the car removed from the parking lot due to the nature of the items allegedly stolen and the possibility the car contained other precursors. Defendant was going to be arrested on the shoplifting charge, and Seth Caldwell did not have a driver's license.[6] Captain Berte testified that he would

---

[5] The record is silent regarding what occurred during the three hours between the time Defendant was arrested and when she was transported to the jail. Whatever occurred, however, would appear to be irrelevant to the issue of whether her consent to search was voluntary.

[6] While the record is somewhat imprecise, at some point a records check was run on Seth Caldwell, revealing "numerous drug related convictions." According to Officer
(continued...)

have ordered a "city tow" and, pursuant to "standard policy," conducted an inventory search. According to Captain Berte, it is the City's policy to conduct an "extremely thorough" search and inspection of the vehicle prior to towing, in order to reduce false claims.[7]

## V. DISCUSSION

In support of her motion to suppress, Defendant advances two arguments: first, Defendant claims that her consent to search "was obtained in violation of the Fifth and Fourteenth Amendments"; and second, Defendant claims that her consent "was not given voluntarily." The Government disputes both claims and, alternatively, argues that the items seized are admissible under the "inevitable discovery rule" in any event.

### A. Was Defendant's Consent to Search Obtained in Violation of Her Fifth and Fourteenth Amendment Rights?

Defendant first argues that the police officers' failure to advise her of her right against self-incrimination and her right to an attorney, and their continued requests for consent to search after she asked for a lawyer, render her consent to search invalid. For more than 40 years, it has been a fundamental principle of American law that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). It is undisputed that Defendant was not given a "*Miranda* warning" until after she consented to a search of her car. Accordingly, the

---

[6](...continued)
Balder, however, Defendant's prior record was never discussed and he had no knowledge of it. Officer Abernathy also denied any knowledge of Defendant's prior record.

[7] Captain Berte could not recall, however, how the vehicle in this case was ultimately removed from the parking lot.

6

Court must determine whether she was "in custody" when consent was given and, if so, whether the consent violated her Fifth Amendment right against self-incrimination.[8]

In this case, it is undisputed that Defendant was "in custody" when she gave consent to search her vehicle. "Custody occurs either upon formal arrest or under any other circumstances where the suspect is deprived of his freedom of action in any significant way." *United States v. Griffin*, 922 F.2d 1343, 1347 (8th Cir. 1990) (citing *Miranda*, 384 U.S. at 444)). While Defendant was not arrested until the loaded handgun was found under the front seat of her car, the police officers conceded that she was "in custody" while being held in the loss prevention office at Wal-Mart. Defendant was not free to leave and her "freedom of action" was significantly deprived.

Defendant argues that the officers' "repeated requests for consent to search her vehicle" constituted a custodial interrogation. Since Defendant had not been given a *Miranda* warning, she argues that any statements made by her, including her consent to search, violated her Fifth Amendment right against self-incrimination. Defendant argues this is particularly true in this case, since she had affirmatively requested an attorney. *See Davis v. United States*, 512 U.S. 452, 461 (1994) (recognizing the "bright line" rule that "questioning must cease if the suspect asks for a lawyer"). The Government responds, however, by arguing that "a consent to search is not an incriminating statement for the purpose of the Fifth Amendment."

In *United States v. Knight*, 58 F.3d 393 (8th Cir. 1995), the defendant invoked his right to counsel and then "voluntarily reinstated his consent to search." *Id.* at 397-398. The Eighth Circuit Court of Appeals concluded that a voluntary consent to search does not fall within the protections afforded by the Fifth Amendment.

---

[8] Because this action pends in federal court, the Court need not consider the Fifth Amendment's application to the states under the Fourteenth Amendment. *United States v. McClinton*, 815 F.2d 1242, 1244 at n.3 (8th Cir. 1987).

7

> [T]he Fifth Amendment's protection against self-incriminating statements may limit further interrogation once a person in custody invokes his right to counsel, but there is no similar prohibition on securing a voluntary consent to search for physical evidence.

*Id.* at 397. *See also Cody v. Solem*, 755 F.2d 1323, 1330 (8th Cir. 1985) ("Simply put, a consent to search is not an incriminating statement."); *United States v. Rodriguez-Garcia*, 983 F.2d 1563, 1568 (10th Cir. 1993) ("Every federal circuit court which has addressed the *Miranda* issue presented here has reached the conclusion that a consent to search is not an incriminating statement.").

Recognizing that Eighth Circuit precedent defeats her Fifth Amendment argument, Defendant cited two district court cases at the time of hearing: *United States v. Gilkeson*, 431 F. Supp. 2d 270 (N.D.N.Y. 2006), and *United States v. Fleming*, 31 F. Supp. 2d 2 (D.D.C. 1998). The Court in *Gilkeson* recognized the general rule that "[a] request for consent to search does not constitute an interrogation within the meaning of *Miranda* insofar as it does not seek to illicit a self-incriminating statement." *Id.* at 281. The Court concluded, however, that "[t]his case is different because, unlike most consents to search, the consent to search in this case cannot be separated from the *Miranda* violation." *Id.* In *Gilkeson*, the defendant made inculpatory statements regarding the existence and use of a computer, and "the consent was requested and received based on the information which was obtained in violation of *Miranda*." *Id.* at 282. In the instant action, the requested consent was not obtained as a consequence of any prior inculpatory statements by Defendant. Accordingly, *Gilkeson* provides no support for Defendant. In *United States v. Fleming*, the Court suppressed the fruits of a search obtained pursuant to a consent given by the defendant after he invoked his right to counsel. While *Fleming* is not easily distinguished, it conflicts with controlling precedent in the Eighth Circuit and with all of the other cited authority.

The Court finds that when Defendant consented to a search of her car, she was in custody and had invoked her right to counsel (despite not having been given a *Miranda* warning). Nonetheless, clear precedent in the Eighth Circuit provides that "a consent to search is not an incriminating statement." *Cody*, 755 F.2d at 1330. Accordingly, Defendant is not entitled to relief under the Fifth Amendment and *Miranda*.

### B. Was Defendant's Consent to Search Given Voluntarily?

#### 1. Applicable Legal Standard

Next, Defendant argues that her consent to search the vehicle was not given voluntarily. The Fourth Amendment protects persons and their property against unreasonable searches and seizures. A warrantless search is presumptively unreasonable. *United States v. Castaneda*, 438 F.3d 891, 893 (8th Cir. 2006). However, a voluntary consent to search is a valid exception to the warrant requirement. *United States v. Guzman*, 507 F.3d 681, 687 (8th Cir. 2007).

It is undisputed that Defendant consented to the search of her vehicle. The Government bears the burden of proving by a preponderance of the evidence that the consent was given voluntarily and that the officers reasonably believed that the search was consensual. *United States v. Esquivel*, 507 F.3d 1154, 1159 (8th Cir. 2007). "A consent is voluntary if the consenting individual had 'a reasonable appreciation of the nature and significance of his actions.'" *United States v. Saenz*, 474 F.3d 1132, 1136 (8th Cir. 2007) (quoting *United States v. Rambo*, 789 F.2d 1289, 1297 (8th Cir. 1986)). Stated otherwise, Defendant's consent was voluntary "if it was the product of an essentially free and unconstrained choice, rather than the product of duress or coercion, express or implied." *United States v. Morreno*, 373 F.3d 905, 910 (8th Cir. 2004). The Court must view the totality of the circumstances and determine whether the "pressures exerted upon the suspect have overborne his will." *United States v. Jorgensen*, 871 F.2d 725, 729 (8th Cir. 1989). Factors to be considered include the "characteristics of persons giving consent" and

"the environment in which consent is given." *United States v. Chaidez*, 906 F.2d 377, 381 (8th Cir. 1990).

### 2. *Personal Characteristics*

The Court in *Chaidez* listed some of the personal characteristics which are relevant in determining the voluntariness of a person's consent: "(1) their age; (2) their general intelligence and education; (3) whether they were intoxicated or under the influence of drugs when consenting; (4) whether they consented after being informed of their right to withhold consent or of their *Miranda* rights; and (5) whether, because they had been previously arrested, they were aware of the protections afforded to suspected criminals by the legal system." *Id.* (internal citations omitted). The Court will consider these characteristics as applied to Defendant.

Defendant was born in 1953 and was not quite 51 years old at the time of this incident. Defendant was neither burdened by the inexperience of youth, nor was she overtaken by the infirmities of old age. The parties stipulated that Defendant had "13 years" of education. While the record is silent regarding her "general intelligence," Defendant was apparently responsive to the officers' questions, and there is no indication that she suffers from any mental disability. In her brief, Defendant argues that "it is likely the Defendant was under the influence of drugs at the time her consent was requested."[9] There is no evidence in the record, however, to support Defendant's assertion. While there was methamphetamine residue found during the search of the car, all three officers testified that Defendant showed no signs of being under the influence of drugs. Defendant was not given a *Miranda* warning prior to granting consent to search her vehicle. Defendant exhibited a general understanding of those rights, however, when she requested "that lawyer thing." While the reading of *Miranda* rights is a factor to be considered in determining the voluntariness of consent, *Knight*, 48 F.3d at 397, it is not required.

---

[9] Brief in Support of Motion to Suppress (docket number 13-2) at 6.

*Saenz*, 474 F.3d at 1137 ("We have not required an officer to provide *Miranda* warnings before requesting consent to search or held that an absence of *Miranda* warnings would make an otherwise voluntary consent involuntary."). Defendant has a long criminal record[10] and can reasonably be expected to be "aware of the protections afforded to suspected criminals by the legal system." Defendant's awareness of these protections is evidenced by her request for an attorney, despite the fact that she had not been advised of her *Miranda* rights.

### 3. Environmental Factors

In addition to considering the personal characteristics of Defendant, the Court must examine the environment in which her consent was given. The Court in *Chaidez* suggested that courts should ask whether the person who consented: "(1) was detained and questioned for a long or short time; (2) was threatened, physically intimidated, or punished by the police; (3) relied upon promises or misrepresentations made by the police; (4) was in custody or under arrest when the consent was given; (5) was in a public or a secluded place; or (6) either objected to the search or stood by silently while the search occurred." *Chaidez*, 906 F.2d at 381. (internal citations omitted). The Court will examine those factors as applied to this case.

Officer Balder was dispatched to the Wal-Mart store at 7:27 p.m. The record is silent regarding how long Defendant may have been in the loss prevention office prior to the police being called. Officer Balder arrived ten minutes later, at 7:37 p.m., and met

---

[10] Defendant's Pretrial Services Report was admitted into evidence as Government's Exhibit 1, for the sole purpose of establishing Defendant's prior criminal record. Defendant has criminal convictions dating back to 1978, when she was sentenced to prison for breaking and entering and burglary in the second degree. In 1993, Defendant was sent to prison in Illinois on aggravated battery and "armed violence" charges, and was sent to prison in Iowa later that year on drug charges. Defendant was sent to prison in 1994 for "prohibitive acts" and received a 15-year prison term in 1996 for robbery in the second degree. Defendant also has numerous other arrests and convictions, as detailed in the Pretrial Services Report.

11

with Defendant after being briefed by Wal-Mart's loss prevention officer. Officer Balder requested consent to search Defendant's car and she refused. Captain Berte was dispatched to the scene at 7:52 p.m., some 15 minutes after Officer Balder arrived. The record is imprecise regarding when Captain Berte arrived at Wal-Mart, but Officer Abernathy estimated it was "within minutes." Defendant's consent to search was given at 8:15 p.m., approximately 15 minutes after Captain Berte's arrival. Accordingly, it would appear that Defendant was held in the loss prevention office for 48 minutes prior to consenting to the search of her vehicle, plus whatever time expired prior to the police being called.

There is no evidence that Defendant was directly "threatened, physically intimidated, or punished" by Wal-Mart employees or the police. It should be noted, however, that Defendant was the only woman in the loss prevention office. She was seated at a table and surrounded by three uniformed police officers, Wal-Mart's loss prevention officer, and perhaps the store manager. All of those persons were male and apparently standing. Defendant was accompanied by Seth Caldwell, but the record is silent regarding where he was sitting or standing. While no one threatened Defendant in any way, it can be reasonably inferred that Defendant may have been "physically intimidated" by the circumstances.

There is no evidence that police made any "promises or misrepresentations" to Defendant. Defendant argues, however, that Captain Berte's "dangerous chemicals" speech was intended "to play upon the Defendant's emotions and social conscience."[11] In her brief, Defendant equates Captain Berte's "dangerous chemical speech" with the "Christian burial speech" delivered by Detective Leaming in *Brewer v. Williams*, 430 U.S. 387 (1977). There, the officer induced the defendant to show him where the victim's body could be found, during a car ride from Davenport to Des Moines, by suggesting that "the

---

[11] Brief in Support of Motion to Suppress (docket number 13-2) at 7.

parents of this little girl should be entitled to a Christian burial for the little girl who was snatched away from them on Christmas Eve and murdered." *Id.* at 393. The federal district court in a habeas corpus proceeding concluded that the Defendant's Fifth and Sixth Amendment rights were violated, and that the statement was made involuntarily. *Williams v. Brewer*, 375 F. Supp. 170 (S.D. Iowa 1974). The Eighth Circuit Court of Appeals affirmed on Fifth and Sixth Amendment grounds, but did not address the issue of involuntariness. *Williams v. Brewer*, 509 F.2d 227 (8th Cir. 1974). The United States Supreme Court affirmed on the Sixth Amendment argument, but did not consider the remaining two claims. *Brewer*, 430 U.S. at 397 ("there is no need to review in this case the doctrine of *Miranda v. Arizona*, a doctrine designed to secure the constitutional privilege against compulsory self-incrimination. (citation omitted). It is equally unnecessary to evaluate the ruling of the District Court that Williams' self-incriminating statements were, indeed, involuntarily made."). In the instant action, the Sixth Amendment is not implicated and, therefore, the Supreme Court's ruling in *Brewer* has no application here. Similarly, the ruling of the Eighth Circuit Court of Appeals has no application because a consent to search does not implicate the Fifth Amendment. *See* discussion in Part V(A) above. Nonetheless, this Court is informed by the district court's conclusion that the Christian burial speech contributed to rendering Williams' statements involuntary. *See Brewer*, 375 F. Supp. at 183-185.

Finally, while Defendant was not under arrest when her consent was given, it is undisputed that she was "in custody." Defendant was being detained in a small windowless room at Wal-Mart, which was not open to the public. The police intended to arrest Defendant on the shoplifting charge and she was not free to leave.

### 4. Analysis

The Court believes that the question of whether Defendant's consent to search was voluntary is a close one. On the one hand, Defendant initially refused to consent and invoked her right to counsel. Following a delay, Defendant was asked again to consent

13

by another officer, who suggested that "hundreds and hundreds" of people could be at risk by any dangerous chemicals contained in Defendant's car. During this time, Defendant was confined in a small windowless room, surrounded by three uniformed police officers and one or more Wal-Mart employees. Defendant, who is relatively small in stature, was the only woman in the room. Defendant was seated at a table, while the police officers and Wal-Mart personnel were apparently standing. Defendant had been detained for nearly one hour before consenting to a search of her vehicle.

On the other hand, Defendant was 50 years old, has 13 years of education, and is apparently of at least average intelligence. Defendant has had numerous encounters with law enforcement over the past 35 years, including multiple terms in jail and prison. These prior experiences would presumably reduce the coercive effect which might otherwise be felt by a less experienced individual in these circumstances. While Defendant was not given a *Miranda* warning, she demonstrated a general understanding of her rights by requesting an attorney. The questioning by Officer Balder and Captain Berte prior to Defendant giving her consent to search was limited to approximately 15 minutes each. Notwithstanding Defendant's argument, there is no evidence Defendant was under the influence of drugs.

After considering all of the facts and circumstances, the Court concludes that the Government has met its burden of proving by a preponderance of the evidence that Defendant's consent to search her vehicle was given voluntarily. While Defendant was asked more than once to consent to a search of her vehicle, there is no evidence that the officers were threatening or that the dialogue was unduly coercive. The Court believes that Captain Berte had a legitimate concern that if the vehicle contained other chemicals used to manufacture methamphetamine, then it could constitute a danger to persons using the parking lot at Wal-Mart. Having found that Defendant's consent to search was given voluntarily, the Court concludes that Defendant is not entitled to relief on this ground.

## C. Is the "Inevitable Discovery Doctrine" Applicable?

As set forth above, I have concluded that Defendant's consent to search was voluntary, and that a consent to search does not implicate a Fifth Amendment right against self-incrimination. Since the District Court may conclude that Defendant's consent to search was not voluntary, however, the Court will also consider the Government's argument that the inevitable discovery doctrine applies.

In *Nix v. Williams*, 467 U.S. 431 (1984), the Court adopted the inevitable discovery doctrine, which it described as "closely related" to the independent source doctrine. Both doctrines constitute exceptions to the exclusionary rule generally associated with police misconduct. Under either doctrine, evidence is not excluded if it "would put the police in a worse position than they would have been in absent any error or violation." *Id.* at 443. Exclusion of evidence that would have been inevitably discovered would "put the government in a worse position, because the police would have obtained that evidence if no misconduct had taken place." *Id.* at 444.

> If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . . then the deterrence rationale has so little basis that the evidence should be received. Anything less would reject logic, experience, and common sense.

*Id.*

To prevail under the inevitable discovery exception to the exclusionary rule, the government must establish "(1) that there was a reasonable probability that the evidence would have been discovered by lawful means in the absence of police misconduct, and (2) that the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation." *United States v. Pruneda*, 518 F.3d 597, 604 (8th Cir. 2008) (quoting *United States v. Conner*, 127 F.3d 663, 667 (8th Cir. 1997)). Here, the Government argues that even if Defendant did not give her voluntary consent to

search the vehicle, a search would have been conducted nonetheless in conjunction with removing the vehicle from Wal-Mart's parking lot.

While still in the loss prevention office at Wal-Mart, it had been determined that Defendant would be arrested for allegedly stealing cold medicine containing pseudoephedrine. That is, the decision to arrest Defendant was made prior to, and independent of, her consent to search the vehicle. Given the nature of the items allegedly stolen and the possibility that other chemicals associated with the manufacture of methamphetamine may be in the vehicle, the manager at Wal-Mart asked that the vehicle be removed from the parking lot. Defendant's impending arrest obviously prevented her from removing the vehicle. The person accompanying Defendant at that time did not have a valid driver's license.

Captain Berte testified that pursuant to police department policy, he would have ordered the vehicle towed. Standard policy required Captain Berte to perform an exterior inspection of the vehicle and a search of its interior prior to the vehicle being removed. Such inventory searches protect the owner's property, protect police against claims or disputes over lost or stolen property, and protect the police from "potential danger." *United States v. Hall*, 497 F.3d 846, 850 (8th Cir. 2007) (citing *South Dakota v. Opperman*, 428 U.S. 364 (1976). *See also United States v. Beal*, 430 F.3d 950, 954 (8th Cir. 2005) (inventory search prior to towing authorized, even though the registered owner of the vehicle was present at the scene and offered to take custody of it).

Even if Defendant did not give voluntary consent to search her vehicle, the Government has established by a preponderance of the evidence that there was a reasonable probability the evidence would have been discovered in a lawful inventory search. *United States v. Alvarez-Gonzalez*, 319 F.3d 1070, 1072 (8th Cir. 2003) (holding the inevitable discovery doctrine was applicable since it was reasonably probable that the defendant would have been detained and a routine inventory search of his vehicle would have been conducted prior to towing). Therefore, the inevitable discovery doctrine allows

evidence seized in the search of Defendant's car be introduced at trial, even if her consent to search was involuntary.

## VI. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the District Court **DENY** the Motion to Suppress (docket number 13) filed by the Defendant on October 14, 2008.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1)(B), that within ten (10) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the District Court. *Defendant is reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections." Accordingly, if Defendant is going to object to this Report and Recommendation, he must promptly order a transcript of the hearing held on October 27, 2008.*

DATED this 6th day of November, 2008.

_____
JON STUART SCOLES
United States Magistrate Judge
NORTHERN DISTRICT OF IOWA