# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>vs.<br><br>PAMELA GOLINVEAUX,<br><br>   Defendant. | No. 08-CR-2015-LRR<br><br>**ORDER** |

## *I. INTRODUCTION*

The matter before the court is Defendant Pamela Golinveaux's Objections ("Objections") (docket no. 38) to United States Magistrate Judge Jon S. Scoles's Report and Recommendation ("Report and Recommendation") (docket no. 37). Judge Scoles recommends the undersigned deny Defendant's Motion to Suppress ("Motion") (docket no. 13).

## *II. RELEVANT PRIOR PROCEEDINGS*

On August 26, 2008, Defendant was charged in a one-count Indictment with being a felon in possession of ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1) (docket no. 1).

On October 14, 2008, Defendant filed the Motion. On October 27, 2008, the Magistrate Judge held a hearing ("Hearing") on the Motion. On November 6, 2008, the Magistrate Judge issued the Report and Recommendation. On November 13, 2008, Defendant filed her Objections.

The court finds the Objections fully submitted and ready for decision.

## *III. STANDARD OF REVIEW*

When a party files a timely objection to a magistrate judge's report and recommendation, "[a] judge of the court shall make a de novo determination of those

portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1) (2005); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003); *see also* Fed. R. Crim. P. 59(b)(3) (stating "[t]he district judge must consider de novo any objection to the magistrate judge's recommendation"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 59(b)(3) (stating a judge "may accept, reject, or modify the recommendation receive further evidence; or resubmit the matter to the magistrate judge with instructions"). The Eighth Circuit Court of Appeals has held it is reversible error for the district court to fail to engage in a de novo review of a magistrate judge's report when such review is required. *Lothridge*, 324 F.3d at 600. Accordingly, the court reviews the Report and Recommendation de novo.

## IV. ANALYSIS

Defendant raises three objections to the Report and Recommendation. Upon de novo review of the record in its entirety, the court shall overrule them. The court adopts the Magistrate Judge's discussion of the facts, Part IV, of the Report and Recommendation, in full. And, for the reasons set forth below, the court shall fully adopt all sections of the Report and Recommendation.

### A. *Defendant's Consent to Search Under the Fifth Amendment*

First, Defendant objects to the Report and Recommendation on the grounds the Magistrate Judge wrongly concluded Defendant's rights under the Fifth Amendment were not violated when officers continued to request her consent to search her vehicle after she asked for an attorney. Defendant asserts the Magistrate Judge should have relied on *United States v. Fleming*, 31 F. Supp. 2d 3 (D.D.C. 1998), rather than Eighth Circuit Court of Appeals precedent (*United States v. Knight*, 58 F.3d 393 (8th Cir. 1995); *Cody v. Solem*, 755 F.2d 1323 (8th Cir. 1985)), and found Defendant consented as a result of

2

an unconstitutional interrogation following invocation of her *Miranda* rights. The court notes Defendant's Objection is comprised of the same argument set forth in her briefing on the merits. Defendant asserts that *Fleming* is "factually indistinguishable" from her case and therefore the court should follow its reasoning and find the officer's request for consent amounted to substantive questioning. Objections at 2.

In *Fleming*, the defendant was arrested in a hospital lobby. *Fleming*, 31 F. Supp. 2d at 4. Pursuant to a search incident to arrest, agents found a set of keys in the defendant's pocket. *Id*. When asked if he had driven to the hospital, the defendant answered that he had not. *Id*. Agents then transported the defendant to a field office where he was processed and informed of his *Miranda* rights. *Id*. The defendant stated he did not want to waive his rights and requested an attorney. *Id*. While in the processing room, an agent told the defendant he had found the defendant's vehicle in the hospital parking lot. *Id*. at 5. "The defendant then stated, 'I guess you will find the gun then'" ("Statement"). *Id*. Agents then asked for consent to search the vehicle and Defendant agreed. *Id*. Defendant sought to suppress his statement as well as the gun. The court suppressed the gun because "the agents[,] in requesting consent to search after [the defendant] invoked his rights and specifically requested an attorney[,] clearly violate[d] [the defendant's Fifth Amendment] right to counsel." *Id*. The court did not go on to address the admissibility of the Statement because, "absent the gun, there [was] no basis with which the government [could] go forward" on that count. *Id*. at 6.

As an initial matter, the court notes that it is not bound to follow decisions of other district courts. This is particularly true where, as here, the district court's legal reasoning is questionable. First, it appears the defendant's consent in *Fleming* was not the result of an unconstitutional interrogation—it was volunteered. When the defendant was told that agents had found his vehicle, he blurted out "I guess you will find the gun then." *Fleming*, 31 F. Supp. 2d at 5. Agents then asked for his consent to search to which he readily

3

agreed. *Id*. The agent's statements were not direct questioning nor were they "reasonably likely to evoke an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291 at 301 (1980). It was simply a statement that they had found his vehicle followed by a request to search. Therefore the statement was not obtained in violation of the Fifth Amendment.

Second, "the *Miranda* rule protects against violations of the Self-Incrimination Clause, which, in turn, is not implicated by the introduction at trial of physical evidence resulting from voluntary statements." *United States v. Patane*, 542 U.S. 630, 634 (2004). In other words, the failure to give *Miranda* warnings does not by itself require the court to suppress the physical fruits of un-warned and voluntary statements. Since the defendant's consent to search in *Fleming* was voluntary, the fruit of his consent, the gun, is not protected by *Miranda*.

Third, *Fleming* began its analysis with the admissibility of the gun under the Fifth Amendment. The court concluded that without the gun, the government could not go forward with the charge and therefore the admissibility of the defendant's statement was irrelevant. *Fleming*, 31 F. Supp. 2d at 6. This approach is illogical in light of the aforementioned United States Supreme Court case law. The court does not agree with the analysis of the *Fleming* court and declines to follow it.

In any event, the court will not follow *Fleming* because the governing law is clearly to the contrary. The Eighth Circuit Court of Appeals has held that a voluntary consent to search does not fall within the protections afforded by the Fifth Amendment. *Knight*, 58 F.3d 393 at 397-98. "Simply put, a consent to search is not an incriminating statement." *Cody*, 755 F.2d at 1330. As stated in the Report and Recommendation, "the Fifth Amendment's protection against self-incriminating statements may limit further interrogation once a person in custody invokes his right to counsel, but there is no similar prohibition on securing a voluntary consent to search for physical evidence." *Knight*, 58 F.3d at 397. Accordingly, the court overrules Defendant's objection and adopts Part V(A)

of the Report and Recommendation.

   B. *Voluntariness of Defendant's Consent to Search Under the Fourth Amendment*

Second, Defendant objects to the Report and Recommendation on the grounds her consent to search the vehicle was not given voluntarily. Specifically, "Defendant objects to the [Magistrate Judge's] conclusion that the environment surrounding . . . Defendant at the time she gave consent was not unduly coercive." Objections at 3. The court notes that, again, Defendant's Objection is comprised of the same argument set forth in her briefing on the merits.

In assessing the voluntariness of Defendant's consent to search her vehicle, the court must view the totality of the circumstances, *United States v. Chaidez*, 906 F.2d 377, 380 (8th Cir. 1990), to determine if Defendant "'had a reasonable appreciation of the nature and significance of [her] actions.'" *United States v. Saenz*, 474 F.3d 1132, 1336 (8th Cir. 2007) (citing *United States v. Rambo*, 789 F.2d 1289, 1297 (8th Cir. 1986)). The Eighth Circuit Court of Appeals has "not required officers to provide *Miranda* warnings before requesting consent to search or held that an absence of *Miranda* warnings would make an otherwise voluntary consent involuntary." *Saenz*, 474 F.3d at 1137 (citing *United States v. Payne*, 119 F.3d 637, 643 (8th Cir. 1997)). "The government bears the burden of showing the consent [to search] was freely and voluntar[il]y given and not [the] result of duress or coercion." *Untied States v. Sanders*, 424 F.3d 768, 773 (8th Cir. 2008) (citing *Laing v. United States*, 891 F.2d 683, 686 (8th Cir. 1989)).

The court has already adopted the facts as presented in Part IV of the Report and Recommendation. In sum, at the time of the incident, Defendant was 50 years old, had 13 years of education and demonstrated no indication of mental disability. The three officers present at her questioning testified she demonstrated no signs of being under the influence of drugs. Defendant invoked her right to counsel prior to being informed of her rights, indicating a general understanding of her rights. Defendant has an extensive

criminal record and therefore can reasonably be expected to be "aware of the protections afforded to suspected criminals by the legal system." *United States v. Griffith*, 533 F.3d 979, 984 (8th Cir. 2008) (internal citations omitted).

With respect to the environment surrounding Defendant at the time she gave consent, Defendant was in custody in a small windowless room for almost an hour. She was joined in the room by three male law enforcement officers and at least one Wal-Mart employee. Defendant was not informed of her *Miranda* rights; however, she requested an attorney. The officers requested her consent more than once. There is no evidence Defendant was subject to threats, physical intimidation, punishment, promises or misrepresentations. However, she was subject to the "dangerous chemical speech."[1] Given the circumstances and her stature, Defendant may have felt physically intimidated.

Again, "Defendant objects to the [Magistrate Judge's] conclusion that the environment surrounding [] Defendant at the time she gave consent was not unduly coercive." Objections at 3. However, this mis-characterizes the Magistrate Judge's findings. The Magistrate Judge held *"[a]fter considering all of the facts and circumstances*, the Court concludes that the [g]overnment has met its burden of proving by a preponderance of the evidence that Defendant's consent to search her vehicle was given voluntarily." Report and Recommendation at 14 (emphasis added). The Magistrate Judge correctly considered the totality of the circumstances—not just the nature of Defendant's environment at the time she consented, in evaluating the voluntariness of Defendant's consent. The court is to evaluate "the environment in which consent is given," as well as the "characteristics of the person giving consent." *Chaidez*, 906 F.2d

---

[1] Captain Berte told Defendant he was concerned about the potential danger to the public if Defendant's car contained other precursors for the manufacture of methamphetamine. Captain Berte told Defendant that "hundreds and hundreds" of people go in and out of Wal-Mart and if her car contained dangerous chemicals, it would constitute a hazard to the public.

6

at 381. The Magistrate Judge duly followed this requirement.

In any event, the court finds the environment surrounding Defendant at the time she gave her consent was not unduly coercive. She was not subject to threatening dialogue. There is no evidence of "duress or coercion, express or implied." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). Given her education, experience and intelligence the court finds her consent to search was the result of an "essentially free and unconstrained choice." *United States v. Luna*, 368 F.3d 876, 878 (8th Cir. 2004).

The court agrees with the Magistrate Judge that in that in light of all of the facts and circumstances, Defendant's consent to search her vehicle was given voluntarily. Accordingly, the court overrules Defendant's objection and adopts Part V(B) of the Report and Recommendation.

## *C. Inevitable Discovery*

Finally, Defendant objects to the conclusion that, even if Defendant's consent to search was not voluntary, the firearm and ammunition would have been inevitably discovered pursuant to an inventory search. Objections at 4. Because the court finds Defendant's consent to search was voluntary and that a consent to search does not implicate the Fifth Amendment right to be free from self-incrimination, the court does not have to evaluate whether the evidence would be admitted under the doctrine of inevitable discovery. However, out of an abundance of caution, the court will address Defendant's third objection.

Defendant objects to the Magistrate Judge's reliance on *United States v. Alvarez-Gonzalez*, 319 F.3d 1070 (8th Cir. 2003), arguing it is factually distinguishable from the instant action. In *Alvarez-Gonzalez*, the defendant was stopped for a violation of South Dakota traffic law. 319 F.3d at 1071. While verifying the defendant's driver's license, the officer questioned the defendant regarding his immigration status. *Id.* at 1071. The officer discovered the defendant had two invalid driver's licenses. *Id.* During this time,

7

the agent also had the Defendant speak on the phone with a border patrol agent. *Id*. The agent questioned the defendant and determined the he was in the country illegally. *Id*. The agent requested the officer detain the defendant. *Id*. The officer then read the defendant his *Miranda* rights and asked if there were any drugs or cash in the vehicle. *Id*. The defendant informed the officer that there was a firearm in the vehicle. *Id*. Defendant was charged with being an alien in possession of a weapon in violation of 18 U.S.C. § 922(g)(5). *Id*. The defendant was arrested and his vehicle was towed and searched. *Id*.

The defendant moved to suppress his statements and the firearm on the grounds that the questioning exceeded the scope of the original traffic stop and his statements were obtained in violation of *Miranda*. *Id*. The court suppressed the defendant's statements made prior to being informed of his *Miranda* rights. *Id*. However, the Eighth Circuit Court of Appeals affirmed the district court's finding that the firearm was admissible because it inevitably would have been discovered. *Id*. at 1072. The Eighth Circuit Court of Appeals agreed that there was a reasonable likelihood that the defendant would have been detained for not having a valid driver's license, and, because the parties were out on the highway, there was a reasonable probability the vehicle would have been towed and searched. *Id*. Defendant asserts the court should not have relied on *Alvarez-Gonzalez* because unlike that defendant, she was arrested inside Wal-Mart and away from her car. Defendant also argues that the officers could not explain how they determined that she had driven to Wal-Mart. Defendant's point is well-taken—the record is not clear as to how the officers determined she had driven to Wal-Mart, if at all, and what car in the parking lot was hers. However, the court does not have to rely on *Alvarez-Gonzalez* to conclude Defendant's vehicle inevitably would have been searched.

Officer Berte testified that the Wal-Mart manager wanted Defendant's vehicle removed from the parking lot. The person accompanying Defendant at that time did not have a driver's license and therefore could not remove the car from the lot. Officer Berte

further testified that pursuant to police department policy, he would have ordered the vehicle towed and would have performed an inventory search. Just because Defendant was arrested away from her car does not change the fact that the owner of the lot wanted the vehicle removed and the police intended to have it towed. For these reasons, the court finds there was a "reasonable probability" the ammunition would have been found and that the government was pursuing a "substantial alternative" because they intended to have her vehicle towed in any event. *See United States v. Thomas*, 524 F.3d 855, 859 (8th Cir. 2008). This evidence "ultimately or inevitably would have been discovered. . . ." *Nix v. Williams*, 467 U.S. 431, 444 (1984). Accordingly, the court overrules Defendant's third objection and adopts Part V(C) of the Report and Recommendation.

## *V. CONCLUSION*

In light of the foregoing analysis, the court **ORDERS**:

(1) The Objections (docket no. 38) are **OVERRULED**; and

(2) The Report and Recommendation (docket no. 37) is **ADOPTED**.

**IT IS SO ORDERED.**

**DATED** this 22nd day of December, 2008.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA